**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**(Wichita Falls Division)**

| | | |
|---|---|---|
| **PRECISE DIAGNOSTICS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CIVIL ACTION NO. 7:23-CV-00020** |
| **XAVIER BECERRA, Secretary,** | § | |
| **UNITED STATES** | § | |
| **DEPARTMENT OF HEALTH** | § | |
| **AND HUMAN SERVICES,** | § | |
| | § | |
| **Defendant.** | § | |

**VERIFIED COMPLAINT, APPLICATION FOR *EX PARTE* TEMPORARY**
**RESTRANING ORDER, REQUEST FOR DECLARATORY RELIEF, REQUEST FOR**
**PRELIMINARY AND PERMANENT INJUNCTION, REQUEST FOR EMERGENCY**
<u>**MANDAMUS RELIEF AND FOR ATTORNEY FEES**</u>

COMES NOW, Precise Diagnostics, LLC (the "Plaintiff" or "Precise"), and files this, its

Verified Complaint, Application for *Ex Parte* Temporary Restraining Order, Request for

Declaratory Relief, Request for Emergency Mandamus Relief, and for Attorney Fees against

Xavier Becerra, Secretary of the United States Department of Health and Human Services (the

"Defendant" or "HHS"), and alleges and avers as follows:

**INTRODUCTION**

1.      On October 27, 2022, Defendant issued a Notice of Termination of Suspension of

Medicare Payments that informed Plaintiff it terminated the payment suspension imposed almost

180 days ago (Exhibit 1).  The suspension was imposed approximately 270 days.  The suspension

withheld *all* earned payments for services rendered by Precise, an Independent Clinical

Laboratory participating in the federal Medicare program, during a pending investigation of its

payments.  Notwithstanding its October 27, 2022 termination of suspension, Defendant has

continued to withhold payments without legal justification for another 120 days. The laboratory derives essentially all of its revenues from providing testing for Medicare beneficiaries, and withholding its payments will soon force it to shut down and filing bankruptcy.

2.      In fact, Defendant has illegally confiscated in excess of $245,698.66 of the laboratory's earned payments. Plaintiff has no right to a hearing nor is judicial review available to contest the suspension action, or the confiscation of its payments after the action was terminated. This violates the laboratory's Due Process rights under the U.S. Constitution amend. V, §1. [1] Accordingly, Plaintiff seeks to enjoin HHS's ultra vires continuation of "suspension" of Plaintiff's Medicare payments, and violations of its Due Process rights. The *ultra vires* withholding of these payments will irreparably harm Plaintiff by forcing it out of business and into bankruptcy, and it jeopardizes the health and safety of the laboratory's patients by disrupting their services and requiring that they obtain them elsewhere. Thus, Defendant should be ordered to immediately refund the $245,698.66 confiscated and any other payments withheld after the October 27, 2022 termination of the suspension. [2]

3.      Alternatively, Plaintiff has a clear right to mandamus relief, Defendant a clear duty to act, and no other adequate remedy is available, and this Court should issue a decision compelling Defendant to cease its continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022 and instructing

---

[1] It also is contrary to HHS's own policy when imposed during the pandemic and COVID-19 national emergency. *See* 42 C.F.R. §405.371(b)(1)(ii).

[2] In *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496 (5th Cir. 2018), the Fifth Circuit held the trial court had jurisdiction under the collateral-claim exception to the administrative exhaustion requirement over a provider's due process and *ultra vires* claims. The provider brought an action to prevent recoupment until a hearing could be provided in accordance with 42 U.S.C. § 1395ff(d) and in conformance with Due Process of Law.

an immediate refund of the $245,698.66 confiscated and any other payments withheld after the suspension was terminated.

## PARTIES

4.      Precise Diagnostics, LLC, is a Texas limited liability company with its principal place of business at 2695 Villa Creek Drive, Suite B255, Farmers Branch, Texas 75234. It provides laboratory services to Medicare beneficiaries in Dallas County and the surrounding area.

5.      Defendant, Xavier Becerra, in his official capacity, is the Secretary of the United States Department of Health and Human Services ("HHS"), the governmental department which contains the Centers for Medicare and Medicaid Services ("CMS"), the agency within HHS that is responsible for the administration of the Medicare and Medicaid programs. He may be served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure by serving the U.S. Attorney for the district where the action is brought, serving the Attorney General of the United States in Washington, D.C., by certified mail, and by serving the United States Department of Health and Human Services by certified mail.

## JURISDICTION

6.      The Court has jurisdiction pursuant to 28 U.S.C. § 1331 under the entirely collateral Constitutional claim exception to the Medicare exhaustion requirement established by *Mathews v. Eldridge*, 424 U.S. 319 (1976).  Defendant's imposition of the Medicare payment suspension without giving notice and an opportunity for a hearing to contest the adverse action and its *ultra vires* withholding of payments after its termination violates Due Process of Law. There is a high risk that Plaintiff will be erroneously deprived of its property interest in Medicare payments it has earned for services rendered and withheld indefinitely by the suspension, pursuant to 42 C.F.R. § 405.371(a)(2) because the provider is not entitled to notice

and opportunity for a hearing to dispute and contest the suspension, and there is absolutely no established time frame for resolving the investigation. Thus, Plaintiff is deprived of an administrative appeal, which effectively prevents the provider from exhausting administrative remedies to challenge the payment suspension. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions. Such failure violates Plaintiff's constitutional right of Due Process guaranteed by the U.S. CONST. amend. V, § 1. Moreover, the Medicare payment suspension and the request to temporarily rescind the action is not a benefits determination but an otherwise unreviewable procedural issue. Jurisdiction is based upon Plaintiff's constitutional claim that is collateral to a substantive claim for benefits. Likewise, Defendant violates Plaintiff's patients' right to access such healthcare by imposing the suspension during the COVID-19 pandemic and national emergency when staffing shortages exist for healthcare providers.

7.      Additionally, the Court has jurisdiction over the lawsuit pursuant to 42 U.S.C. §§ 405(g), 1395ii and 1395ff(b), and on the authority of *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000).  Defendant's failure to extend to Plaintiff an administrative appeal to contest the Medicare payment suspension and its *ultra vires* withholding of payments after its termination violates Due Process of Law. Thus, Plaintiff is deprived of an administrative appeal, which effectively prevents the provider from exhausting administrative remedies to challenge the payment suspension. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions. Section 405 of the statute "would not simply channel review through the agency but would mean no review at all." *Illinois Council*, 529 U.S. at 17. Therefore, the exhaustion requirement is excepted under *Bowen v. Michigan Academy of Family Physicians*,

476 U.S. 667 (1986). This exception was explicitly reaffirmed by *Illinois Council*, 529 U.S. at 19-23. The amount in controversy exceeds the $1,000 jurisdictional limit.

## VENUE

8.      Venue is proper in this Court under 42 U.S.C. §§ 405(g), 1395ii and 1395ff(b), and 28 U.S.C. §§ 1391(b) and (e), and 5 U.S.C. § 703.

## APPLICABLE MEDICARE LAWS

### The Medicare Program

9.      As part of the Social Security Amendments of 1965, Congress established the Medicare program: a national health insurance plan to cover the cost of medical care for the elderly and disabled. *See* 42 U.S.C. § 1395 *et seq*. Officially known as "Health Insurance Benefits for the Aged and Disabled," it provides basic protection against the costs of inpatient hospital and other institutional provider care. It also covers the costs of physician and other healthcare practitioner services and items not covered under the basic program. In 1997, beneficiaries were extended the option of choosing a managed care plan. More recently, in 2006, the program was expanded further to include a prescription drug benefit.

### Medicare Laboratory Services

10.     A laboratory may enroll in Medicare as an Independent Clinical Laboratory in accordance with Title 42, Chapter IV, CFR Part 493. As such, the laboratory must meet the conditions for laboratories and be certified to perform testing on human specimens under the Clinical Laboratory Improvement Acts of 1988 (CLIA). Medicare covers diagnostic clinical laboratory services that are ordered by a physician who is treating a beneficiary and who uses the results in the management of the beneficiary's specific medical problem (42 C.F.R. §410.32(a)). These covered services can be furnished in hospital laboratories (for outpatient or nonhospital

patients), physician office laboratories, independent laboratories, dialysis facility laboratories, nursing facility laboratories, and other institutions.

### Payment and Audit Functions

11.    Medicare's payment and audit functions are performed by various federal contractors. For instance, the payment of claims for laboratory services at issue, in this case, was made by Novitas Solutions. Various other contractors, like Qlarant, a Unified Program Integrity Contractor ("UPIC"), investigate instances of suspected fraud, waste, and abuse as well as identify any improper payments that are to be collected by Medicare Administrative Contractors ("MAC").

### Appeal Process

12.    Laboratories participating in the Medicare program are entitled to appeal the initial determination. *See* 42 U.S.C. § 1395ff. Federal regulations establish an elaborate administrative appeal process to review the adverse action. *See* 42 C.F.R. Subpart I – Determinations, Redeterminations, Reconsiderations, and Appeals Under Original Medicare. A provider dissatisfied with an initial determination may request a Redetermination by a contractor in accordance with 42 C.F.R. §§ 405.940-405.958. The Redetermination must be issued within sixty (60) calendar days. If a provider is dissatisfied with a Redetermination decision, it may request a Reconsideration by a Qualified Independent Contractor ("QIC") in accordance with 42 C.F.R. §§ 405.960-405.986. The Reconsideration must be issued within sixty (60) calendar days. In the event the provider is dissatisfied with the Reconsideration decision, it may request an ALJ hearing in accordance with 42 C.F.R. §§ 405.1000-405.1054. The ALJ must issue a decision within ninety (90) calendar days. The provider may request a review of the ALJ's decision by the Medicare Appeals Council in accordance with 42 C.F.R. §§ 405.1100-405.1140. The Council must issue a decision within ninety (90) calendar days. The Council's decision is the

final agency action, and it is subject to judicial review. *See* 42 U.S.C. § 1395ff; 42 C.F.R. §§ 405.1130, 405.1132, 405.1134; *see also* 42 U.S.C. § 405(g).

### Suspension of Medicare Payments

13.     Medicare payments to providers may be suspended, in whole or in part, by CMS or its contractors if there is "reliable information that an overpayment exists." 42 C.F.R. § 405.371(a)(1).

14.     In cases of suspected fraud, CMS or its contractors may suspend Medicare payments where there is a "credible allegation of fraud" against the provider unless there is good cause not to suspend payments. 42 C.F.R. § 405.371(a)(2).

15.     CMS may find that good cause exists *not* to suspend a provider's payments where, among other things, it is determined that beneficiary access to services would be so "jeopardized by a payment suspension" as to cause a "danger to life or health." 42 C.F.R. § 405.371(b)(ii).

16.     Every 180 days after the initiation of a suspension of payments based on a credible allegation of fraud, CMS will evaluate whether there is good cause to extend the suspension. 42 C.F.R. § 405.371(b)(2). Good cause to not continue a suspension is deemed to exist if it has been in effect for 18 months and there has not been a resolution of the investigation. 42 C.F.R. § 405.371(b)(3). However, the suspension can be continued indefinitely if the case has been referred to OIG for enforcement action or the DOJ requests that it be continued based on the ongoing investigation and anticipated filing of a criminal or civil action or both. 42 C.F.R. §§ 405.371(b)(3)(i), (ii).

### Opportunity for Rebuttal Statement

17.    A laboratory whose payments are suspended without notice, as in this case, is given by the Medicare contractor an opportunity to submit a rebuttal statement as to why the suspensions should be removed. 42 C.F.R. § 405.372(b)(2). *See also* 42 C.F.R. § 405.374. When a rebuttal statement is submitted, CMS, or its contractor, within 15 days from the date of its receipt, must provide written notice of the determination. The rebuttal determination is not an appealable decision. 42 C.F.R. §§ 405.375(a)-(c).[3]

### CONDITIONS PRECEDENT

18.    All conditions precedent have been performed or have occurred.

### FACTS

### Independent Clinical Laboratory

19.    Precise Diagnostics, LLC, is an Independent Clinical Laboratory located in Dallas, Texas, participating in the Medicare program.

20.    Plaintiff has been in operation for 7 years and it accepts patients from throughout Texas.

21.    Precise's annual revenues in 2021 were $1,254,912.00. It has an estimated value of $1.4 million. The laboratory has 17 contract employees and services 4,383 patients on a yearly basis.

### Medicare Payment Suspension

22.    On May 13, 2022, Qlarant, a government contractor, issued to a notice of suspension of Medicare payments. The suspension took effect on May 12th because CMS had

---

[3] CMS contends that because the suspension is not considered an "initial determination," no appeal rights, including right to ALJ hearing, are extended to a provider to contest the adverse action.

asserted that prior notice was "not appropriate," citing 42 C.F.R. §§ 405.372(a)(3) and (4). The suspension action was brought under 42 C.F.R. § 405.371(a)(2) and alleged a "credible allegation of fraud."

23.    As a result of the suspension action, *all* Medicare payments owed to the provider are being withheld pending resolution of the ongoing investigation.

24.    According to the Medicare contractor, the decision to suspend Precise's Medicare payments was made by CMS, the federal agency that administers the Medicare program.

25.    Qlarant, the government contractor initiating the action, alleged that Precise had "misrepresented services billed to the Medicare program." More specifically, it was alleged that the laboratory "did not submit records that showed the results were reviewed, considered in the treatment plan, or assisted in the management/treatment of the beneficiary per Local Coverage Determination (LCD) guidelines." Qlarant also asserted that the records submitted "were inconsistent (i.e., some documentation referenced right foot great toe while other documentation for the same date of services referenced left foot second toe)." In addition, the contractor alleged that the record did not support medical necessity of the services billed.

26.    In support of these allegations, CMS listed five sample claims that purport to provide evidence of the government contractor's findings and serve as a basis for the determination to suspend Medicare payments. Further, the government contractor stated that its list "is not exhaustive or complete in any sense, as the investigation into this matter is continuing. The information is provided by way of example in order to furnish you with adequate notice of the basis for this payment suspension noticed herein."

**Termination of Suspension**

27.    On October 27, 2022, Qlarant issued its Notice of Termination of Suspension of Medicare Payments that informed Plaintiff CMS had directed the contractor to terminate the payment suspension.  The notice stated that "payment withheld as a result of the payment suspension shall be applied first to reduce any overpayments" determined by CMS in accordance with 42 C.F.R. §405.378.  Further, it stated that "this action to terminate" should not be construed as any positive determination regarding the provider's billing and it is not an indication of government approval of or acquiescence regarding the claims submitted."

28.    Subsequently, Plaintiff discovered that CMS continued withholding payment after termination of the suspension and does so today.

29.    Since termination of suspension on October 27, 2022, HHS has withheld payment owed to the provider and converted funds exceeding $245,698.66.

**Qlarant's Records Request**

30.    On November 30, 2021, Qlarant issued a medical review records request for identified Medicare beneficiaries. The records requested included "any and all documentation that support the medical necessity of services" billed on specified dates.

31.    Before the record request deadline, Precise produced to Qlarant extensive documentation pursuant to the medical review records request.

32.    Based on the records requested and the documents produced to Qlarant, the UPIC, has had sufficient and adequate information to determine an overpayment, if one exists, and the suspension simply is a punitive action against the Plaintiff.

**Notice of Overpayments**

33.    On November 28, 2022, Defendant issued a notice of a Medicare overpayment of $15,940.21.

34.    On December 8, 2022, Defendant issued a notice of a Medicare overpayment of $2,319,609.56.

**COVID-19 Pandemic and National Emergency**

35.    On March 13, 2020, President Donald Trump declared a national emergency because of the COVID-19 pandemic.[4]

36.    Because the COVID-19 pandemic continues to cause significant risk to the public health and safety of the nation, the national emergency continues in effect.[5]

37.    When the national emergency was declared, the U.S. Government COVID-19 Response Plan was issued outlining the coordinated federal response activities for COVID-19.[6] Indeed, the pandemic has had a substantial impact on America's hospitals and physicians. And it is having a cascading effect on ancillary Medicare providers and suppliers, including laboratories. It is evident that the healthcare industry, including laboratories, in Texas is facing a crisis due to the pandemic especially when staffing shortages exist.

**Suspension Will Force Plaintiff to Shut Down and File Bankruptcy**

38.    To date, Defendant has illegally confiscated in excess of $245,698.66 of the laboratory's earned payments, and the impact of the Medicare payment suspension threatens to force Plaintiff's closure and filing of bankruptcy.

---

[4] The emergency has been extended multiple times since first announced.
[5] The national emergency declared in Proclamation 9994 concerning the COVID-19 pandemic was continued by President Biden on February 18, 2022.
[6] https://int.nvt.com/data/documenthelper/6819-covid-l 9-responseplan/d367f758bec47cad361 f/optimized/full.pdf#page=l

39.    Precise derives approximately 90% of its revenues from providing sick and elderly Medicare patients laboratory services. Obviously, if the laboratory is not paid for its Medicare laboratory services, it cannot pay its employees, who provide medically necessary services to very needy patients. Indeed, some 17 contract employees will lose their jobs – and each year 4,383 patients must look elsewhere for their laboratory services.

40.    A prolonged and sustained suspension of all Medicare payments will eventually result in Precise's loss of operating funds and its ability to continue business. The process is prolonged by notices that are not followed by immediate action, such as the Medical Review Records Request made on November 30, 2021.

**CMS Abused its Discretion in Not Exercising Good Cause Exception to Suspension**

41.    Had Defendant acted properly, it would not have imposed the suspension. CMS may find good cause exists not to suspend a provider's Medicare payments where it is determined that beneficiary access to items or services would be so jeopardized by a payment suspension as to cause a danger to life or health. 42 C.F.R. § 405.371(b)(1)(ii). It is a clear abuse of discretion for CMS not to find that good cause exists here when the COVID-19 pandemic and the surge of confirmed coronavirus cases will soon overwhelm America's healthcare system, including laboratories. Not only will Plaintiff be forced to shut down, but the government's suspension action also places a greater burden on a healthcare community that is already suffering due to COVID-19.

**Violation of Plaintiff's Due Process Rights**

42.     Plaintiff has a constitutional property interest in payments for services rendered and is now indefinitely suspended during the investigation into the adequacy of its documentation. [7]

43.     Defendant imposition of the Medicare payment suspension without giving notice and an opportunity for a hearing to contest the adverse action and its *ultra vires* withholding of payments after its termination violates Due Process of Law.

44.     Indeed, there is a high risk that Plaintiff will be erroneously deprived of its property interest in Medicare payments it has earned for services rendered and indefinitely withheld by suspension, pursuant to 42 C.F.R. § 405.371(a)(2), because the provider is not entitled under the available process to an administrative appeal to dispute and contest the suspension, and there is absolutely no established time frame for resolving the investigation of its documentation.

45.     A rebuttal process that nothing more than a unilateral review by the government contractor is wholly inadequate and does not afford to Plaintiff an administrative appeal or the requisite protection of Plaintiff's constitutional property interest to satisfy Due Process of Law.

**Violation of Plaintiff's Patients' Due Process Rights**

46     Further, patients of Precise have a constitutional Due Process right (consistent with principles of equal protection) to access safe and reliable services under the federal Medicare

---

[7] The Honorable Judge Fish in *Med-Cert Home Care, LLC v. Azar*, 365 F.Supp.3d 742, 751 (N.D.Tex. 2019) considered the constitutional property right and found that "precedent makes clear that [plaintiff] has a valid property right in receiving Medicare payments for services rendered."

program. HHS violates the patients' right to access such healthcare supplied by imposing the suspension during the COVID-19 pandemic and national emergency.

47.     Due to the COVID-19 outbreak securing such services creates uncertainty in the ability to secure medically necessary and available laboratory services.

48.     Good cause exists not to suspend the laboratory's Medicare payments where, as here, the beneficiary's access to items or services are jeopardized by the payment suspension and cause a danger to life or health. *See* 42 C.F.R. § 405.371(b)(1)(ii). Plaintiff is not entitled to an administrative appeal to contest the suspension or HHS's abuse of discretion in not finding good cause not to impose the adverse action.

**Rebuttal Statement**

49.     A Rebuttal Statement was presented by Plaintiff to Qlarant dated July 18, 2022. This submission informed the government contractor that the Medicare suspension during the COVID-19 epidemic and national emergency was improper because, among other things, (1) the illustrative claims were, in fact, reimbursable under the Medicare statute and regulations; (2) it violates Plaintiff's constitutional right in payments for services rendered by failing to give notice and an opportunity for a hearing while payments are indefinitely suspended during the pendency of an investigation into the adequacy of its documentation, and (3) it violates the provider's patients' constitutional right to access essential healthcare services.

50.     Plaintiff's rebuttal submission also included the Declaration of Jan Spears of MJS & Associates. Ms. Spears is a highly qualified healthcare consultant with over 35 years' experience, and she a Certified Professional Compliance Officer through the American Academy of Professional Coders.

51.     As explained by Jan Spears, a healthcare consultant specializing in Medicare claims, billing, and payment, the claims in dispute meet the requirements for coverage are supported by the necessary certifications, and they otherwise meet all other program criteria for covered laboratory services. She explained that on or about November 30, 2021, Precise received a request for laboratory records for twenty-nine (29) claims. The request was issued by Qlarant Integrity Solutions, the Unified Program Integrity Contractor for the Southwestern Jurisdiction. The letter contained a list of *required* documents and a list of other documents to provide "if applicable." The letter did not require a full treatment record from the ordering physician or follow-up as to how laboratory test results were incorporated into the beneficiary's treatment plan. The laboratory timely complied with the request to produce records.

52.     On or about May 13, 2022, the laboratory received a second letter from Qlarant issuing the Notice of Suspension of Medicare Payments effective May 12, 2022. This form letter stated the following: "The suspension is based on credible allegations of fraud. Specifically, the suspension of your Medicare payments is based on, but not limited to, information that misrepresented services billed to the Medicare program. More particularly you did not submit records that showed the results were reviewed, considered in the treatment plan, or assessed in the management/treatment of the beneficiary per Local Coverage Determination guidelines."

53.     The specific LCD was not referenced in the letter; however, there are two LCDs issued by Novitas Solutions that address some of the requirements for coverage of laboratory in the context of debridement of mycotic nails and/or the frequency of laboratory testing. To clarify, a local coverage decision is issued by a Medicare Administrative Contractor, in this case Novitas Solutions, and applies only to services that are provided within the regional assignment of the contractor. If the coverage decision reaches beyond the scope of the region, a National Coverage

Decision (NCD) is issued. It is worth noting that there is not an applicable NCD for the services of an independent laboratory testing that apply to the action taken by Qlarant.

54.    Precise is an independent laboratory providing the technical and professional component of the laboratory tests that are ordered by the treating physician. The treating physician must provide a written order or requisition for the test and the specimen obtained during the debridement or biopsy inappropriate slide or specimen container. The laboratory further prepares the specimen for testing (decalcification, preparation of special stains, etc) and conducts the testing procedures. The laboratory provides a written report of findings to the treating physician who then modifies the beneficiary's treatment plan accordingly. Both the laboratory and the treating physician must maintain documentation that supports the respective service provided; however, the expectation that each entity is responsible for the medical necessity of both the laboratory and the physician's procedures are not clearly defined in either the Medicare Program Integrity Manual (MPIM) or the Medicare Benefit Policy Manual (MBPM).

55.    The Medicare Benefit Policy Manual Chapter 15, Section 80.1 states the following: "Laboratory services must meet all applicable requirements of the Clinical Laboratory Improvement Amendments of 1988 as set forth at 42 CFR part 493,Section 1862(a)(1)(A) of the Act provides that Medicare payment may not be made for services that are not reasonable and necessary. Clinical laboratory services must be ordered and used promptly by the physician who is treating the beneficiary." Section 80.6.1-Definitions states that "a diagnostic test includes all diagnostic x-ray tests, all diagnostic laboratory tests and other tests furnished to the beneficiary. A "treating physician" is a physician as defined in 1861(r) of the Social Security Act who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results of a diagnostic test in the management of the beneficiary's specific medical problem." An "order" is a

communication from the treating physician/practitioner requesting that a diagnostic test be performed for a beneficiary. The order may conditionally require another diagnostic test for a particular beneficiary if the results of the initial diagnostic test order yields to a certain value determined by the treating physician/practitioner. MBPM – Chapter 15, Section 80.6.1).

56.     Chapter 6 of the Medicare Program Integrity Manual, Section 6.9. 1 Medical Review of Diagnostic Laboratory Tests states the following: "42 CFR 410.32 states that all diagnostic x-rays tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary and that tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary. Publication 100-02 Chapter 15 Section 80.6.1 states that while a physician order is not required to be signed, the physician must clearly document in the medical record his or her intent that the test be performed. Contractors shall consider order requirements for diagnostic tests met if there is: (1) a signed order or signed requisition listing the specific tests, or (2) an unsigned order or unsigned laboratory requisition listing the specific tests to be performed AND an authenticated medical record that supports the physician/practitioner's intent to order the tests, OR (3) an authenticated medical record that supports the physician/practitioner's intent to order the specific tests." MPIM Chapter 6.9.1 – Medical review of Laboratory Services.

57.     Spears reviewed the original documents for the five-claim sample used as the basis for suspension of payment and determined that for all five claims, there is a signed order from the treating physician that meets the requirements for the Medicare requirements listed above. There is a signed order that provides the diagnosis, the anatomical site and histology, and any specific instructions. There is a statement on each order that "allows additional ancillary studies, such a

special staining techniques and marker studies, that can be performed at the discretion of the

pathologist to provide a proper diagnosis unless otherwise indicated on the requisition."

58.    To support its allegations, CMS/Qlarant identified five (5) sample claims for

laboratory services with the following justification provided:

> Claim ID 452821097003820 – *"The records submitted were not consistent and did not show why all the codes billed were necessary for the beneficiary,"*
> Claim ID 4522201255167020 – *"There was no supporting medical record documentation received from the laboratory or by a third party to support the laboratory test billed for the date of service"*
> Claim ID 45281923188900 – *"There was no supporting medical record documentation received from the laboratory or by a third party to support the laboratory test billed for the date of service"*
> Claim ID 45220171851410 – *"There was no documentation that clearly supported why the tests were necessary.*
> Claim ID 452221090138400 – *"Documentation from the requesting practitioner did not support the samples were collected or why the laboratory tests were ordered."*

59.    According to the Medicare Program Integrity Manual, Chapter 8, Section 8.3.2.2.2

"Content of Payment Suspension Notice," the payment suspension notice must include the reason

for suspending payment. (For fraud suspensions, the UPIC shall include the <u>rationale to justify the</u>

<u>action</u> being taken.)." *MPIM Chapter 8, Section 8.2.2.2.2 Content of Payment Suspension*

*Notification).*

60.    The rationale provided by Qlarant to justify payment suspension clearly indicates

that the laboratory is held accountable for *not* providing documentation from the physician's

record *(not specifically requested in the letter)*, and/or for documentation insufficiencies in the

physician's own medical record obtained separately by the Contractor. Further, it appears that the

Contractor examined five claims from the initial eight (8) claims listed in the November 30, 2021

letter requesting records. This pattern of only looking at a few of the claims and suspending

payments accordingly denies the laboratory the opportunity to appeal the decision through the normal Medicare appeal process where documentation can be supplemented, and testimony provided before the appeals contractor.

61.     Based on her review of the documents submitted to Qlarant, Ms. Spears opined that the Medicare suspension is *not* warranted for Precise. She examined all applicable manual requirements, reviewed the order/requisitions from the treating physician and the testing reports from the pathologist, it was her opinion "the laboratory has met the requirements for coverage, and that holding the laboratory to a higher standard from an unnamed LCD is done in error and should not be allowed as justification for suspension of payment."

### Rebuttal Decision

62.     Pursuant to 42 C.F.R. §405.376, CMS, or its Medicare contractor, "must within 15 days, from the date the statement is received, consider the statement (including any pertinent evidence submitted), together with any other material bearing upon the case … and determine whether the facts justify the suspension … or, if already initiated, justify the termination of the suspension …."

63.     Although the rebuttal statement was received by Qlarant on July 19, 2022, and the 15-day period for review has expired, the Medicare contractor has failed to issue a decision in accordance with 42 C.F.R. §405.376.

### Presentment of Claim

64.     On July 25, 2021, Plaintiff issued a formal Presentment of its Collateral Constitutional Claim to Defendant informing HHS that imposing the Medicare suspension during the COVID-19 epidemic and national emergency was improper because, among other things, (1) it violates Plaintiff's constitutional right in payments for services rendered by failing to give

notice and an opportunity for a hearing while payments are indefinitely suspended during the pendency of an investigation into the adequacy of its documentation, (2) it violates the provider's patients' constitutional right to access essential healthcare services, and (3) the Medicare suspension was not warranted for Precise and that the laboratory's services met the requirements for coverage.

## PREDECESSOR LAWSUIT

65.     On or about August 8, 2022, Plaintiff filed a predecessor lawsuit alleging a collateral claim disputing and contesting HHS's Medicare payment suspension because it was imposed without extending administrative or judicial review of the adverse action.  This suit was dismissed on November 7, 2022, after HHS forwarded a copy of the October 27, 2022 termination of suspension because of mootness.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

66.     Defendant's failure to give notice and an opportunity for hearing to dispute and contest the May 13, 2022 suspension of Medicare payments and its *ultra vires* withholding of payments after its termination violates constitutionally required procedures. Plaintiff is deprived of an administrative process that conforms to the concept of Due Process of Law and that effectively prevents the provider from exhausting administrative remedies to challenge the illegal action. No administrative or judicial review is otherwise available to contest Defendant's adverse action. Such failure violates Plaintiff's constitutional right of Due Process of Law guaranteed by the U.S. CONST. amend. V, § 1. Under these facts, the administrative exhaustion requirement is excused.

## CLAIMS FOR RELIEF

### Count 1 - Violation of Procedural Due Process of Law

67.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

68.     The Fifth Amendment to the U.S. Constitution amend. V, §1 guarantees that no person shall be deprived of life, liberty, or property without Due Process of Law.

69.     Plaintiff has a constitutional property right in earned payments for services rendered and is now indefinitely suspended during the pendency of the investigation into the adequacy of its documentation.

70.     Defendant's continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022 violated Due Process of Law.

71.     Despite the lack of appeal rights to challenge the adverse action, Defendant continues to withhold Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022, which will irreparably harm the laboratory by forcing its closure and filing of bankruptcy.

72.     Indeed, Defendant's failings have essentially denied Plaintiff the fundamental requisites of Due Process, notice, and an opportunity to be heard.

73.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to halt its *ultra vires* "suspension" because it violates Due Process of Law and it should be affirmatively enjoined to refund the illegally confiscated payments.

### Count 2 – Violation of Patients' Due Process Right of Access to Medicare

74.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

75.     Patients at Precise have a Due Process right (consistent with principles of equal protection) guaranteed by the U.S. Constitution amend. V, §1 to access safe and reliable services under the federal Medicare program.

76.     Defendant illegal "suspension" violates these patients' right to access such laboratory services by continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022.

77.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to halt its *ultra vires* "suspension" after it was terminated on October 27, 2022, because it discriminates against the class of Medicare beneficiaries entitled to medically necessary laboratory services by illegally withholding the provider's earned Medicare payments under circumstances that place in jeopardy their health and safety and will deny access to such services during the COVID-19 pandemic and national emergency.

**Count 3 – Defendant's Suspension of Payments is Arbitrary and Capricious**

78.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

79.     Defendant's continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022 is an abuse of discretion and arbitrary and capricious.

80.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to halt its illegal "suspension" after it was terminated on October 27, 2022, because it is arbitrary and capricious and it should be affirmatively enjoined to refund the illegally confiscated payments.

## Count 4 – *Ultra Vires*

81.    Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

82.    Defendant's continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022 is *ultra vires* conduct.

83.    Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to halt the illegal "suspension" that is ongoing after it was terminated on October 27, 2022, because it is *ultra vires* conduct and it should be affirmatively enjoined to refund the illegally confiscated payments.

## Count 5 – Mandamus

84.    Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

85.    The Mandamus Act, 28 U.S.C. §1361, provides that federal district courts shall have jurisdiction over any action in the nature of mandamus, and may compel an officer or employee of the United States or any agency thereof to perform a duty owed to Plaintiff.

86.    Exhaustion of administrative remedies is not a requirement for mandamus jurisdiction. *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496, 506 (5th Cir. 2018).

87.    Accordingly, Plaintiff has a clear right to mandamus relief, Defendant a clear duty to act, and no other adequate remedy is available, and this Court should issue a decision compelling Defendant to cease its continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022 and instructing

an immediate refund the $245,698.66 confiscated and any other payments withheld after the suspension was terminated.

## EX PARTE APPLICATION FOR TEMPORARY RESTRAING ORDER

88.     Defendant's continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022 violates Due Process of Law.  Plaintiff will suffer irreparable injury if Defendant is not required to halt its ultra vires "suspension."  Indeed, Defendant must be ordered to refund in excess of $245,698.66 of confiscated payments.  The government's egregious *ultra vires* conduct can only be remedied by a form of injunctive relief otherwise unavailable through the administrative process. Clearly, the combined threats of Plaintiff going out of business and its patients' loss of access to essential healthcare services are sufficient for irreparable harm. *Family Rehabilitation, Inc. v. Azar*, 886 F.3d at 506.

89.     There is no adequate remedy at law to contest and dispute the illegally "suspended" Medicare payments during the COVID-19 pandemic and national emergency. *See Family Rehabilitation, Inc. v. Azar*, 886 F.3d at 504 (jurisdiction to hear procedural due process and *ultra vires* claims). Indeed, when the administrative process is not accessible, extraordinary relief is available. *See U.S. Ex Rel. Rahman v. Oncology Associates, P.C.,* 198 F.3d 502 (4th Cir. 1999) (mandamus available when HHS failed to make overpayment determinations).

90.     There is a substantial likelihood that Plaintiff will prevail on the merits because there is no legal basis for Defendant to continue withholding earned Medicare payments after the October 27, 2022 termination of its suspension. Procedural due process protects against governmental deprivation of a property interest, such as Plaintiff's interest in receiving Medicare payments earned for services rendered. The Honorable Judge Fish in *Med-Cert Home Care, LLC*

*v. Azar*, 365 F.Supp.3d 742, 751 (N.D.Tex. 2019) considered the constitutional property right and found that "precedent makes clear that [plaintiff] has a valid property right in receiving Medicare payments for services rendered." *See also Adams*, No. 4:18-cv-01422 (S.D. Tex. July 11, 2018); *Family Rehabilitation, Inc. v. Azar*, 2018 WL 2670730, *5-6 (N.D. Tex. June 4, 2018). *See also Furlong v. Shalala*, 156 F.3d 384 (2d Cir. 1998) and *Oberlander v. Perales*, 740 F.2d 116 (2d Cir. 1984) (property interest in "earned" Medicaid payments). This is derivative of the protected property interest recognized in one's ownership of money. *See Board of Regents v. Roth*, 408 U.S. 564, 571-72 (1971). Accordingly, Plaintiff has a property interest in receiving the Medicare payments it has earned for services rendered, and that interest is violated by Defendant's continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022.  Because the *ultra vires* withholding of earned Medicare payments after the October 27, 2022 termination of suspension is not legally defensible, Plaintiff demonstrates a substantial likelihood of success on the merits of its procedural due process claim.

91.     The harm faced by Plaintiff outweighs the harm that Defendant would sustain if injunctive relief is not granted. The laboratory will be forced to close its doors and file bankruptcy because of Defendant's *ultra vires* acts, and its patients will be forced to secure alternative services during the COVID-19 pandemic and national emergency when such essential healthcare services are at risk of being unavailable. On the other hand, Defendant will only be required to pay for the current claims of Medicare beneficiaries that it is otherwise obligated to reimburse under law.

92.     Issuance of a preliminary injunction would not adversely affect the public interest. On the contrary, such relief ensures that Plaintiff will continue to provide essential healthcare to Medicare program beneficiaries during the COVID-19 pandemic and national emergency.

93.     Plaintiff is willing to post a bond in the amount the Court deems appropriate. But it should not be required to do so on the facts on this case because Defendant is otherwise obligated to pay for services provided to Medicare beneficiaries under its care.

94.     Plaintiff asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction.

## REQUEST FOR PRELIMINARY INJUNCTION

95.     Plaintiff asks the Court to set its request for preliminary injunction for a full trial on the issues in this application and, after the trial, to issue a preliminary injunction against Defendant.

## REQUEST FOR PERMANENT INJUNCTION

96.     Plaintiff asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendant.

## REQUEST FOR DECLARATORY RELIEF

97.     Plaintiff asks the Court for declaratory relief in accordance with Rule 57 and 28 U.S.C. § 2201 that declares the following:  (1) Defendant's continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022 violate Due Process of Law, (2) Defendant's continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022 violates the provider's patients' constitutional right to access

essential healthcare services under Medicare, (3) Defendant's continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022 is arbitrary and capricious and a clear abuse of discretion, and (4) Defendant's continued withholding of Plaintiff's earned Medicare payments after the termination of HHS's Medicare payment suspension on October 27, 2022 is *ultra vires* conduct.

## ATTORNEY FEES & COSTS

98.     Plaintiff is entitled to an award of attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, upon showing the Plaintiff is a "prevailing party;" a showing that the Plaintiff is "eligible to receive an award; and a statement of "the amount sought, including an itemized statement from any attorney . . ." stating the actual time expended and the rate charged. The prevailing party is entitled to such attorney fees unless the government's position was "substantially justified" or special circumstances make an award unjust.

## PRAYER

99.     For these reasons, Plaintiff asks for judgment against Defendant for the following:

a.     Issue mandatory injunctive relief that requires Defendant to halt the illegal "suspension" after it was terminated on October 27, 2022 and refund confiscated payments because their withholding violates procedural due process of law.

b.     Issue mandatory injunctive relief that requires Defendant to halt the illegal "suspension" after it was terminated on October 27, 2022 and refund all confiscated payments because their withholding violates patients' equal protection and right to essential healthcare services under the Medicare program.

c.  Issue mandatory injunctive relief that requires Defendant to halt the illegal "suspension" after it was terminated on October 27, 2022 and refund all confiscated payments because their withholding is arbitrary and capricious.

d.  Issue mandatory injunctive relief that requires Defendant to halt the illegal "suspension" after it was terminated on October 27, 2022 and refund all confiscated payments because their withholding is *ultra vires* conduct.

e.  Declare illegal Defendant's "suspension" after it was terminated on October 27, 2022 because it (1) violates Due Process of Law by confiscating Plaintiff's earned Medicare payments, (2) violates the provider's patients' constitutional right to access essential healthcare services, (3) is arbitrary and capricious and a clear abuse of discretion, and (4) is *ultra vires* conduct.

f.  Issue an order of mandamus compelling Defendant to release the improperly withheld funds.

g.  Reasonable attorney fees.

h.  Court costs.

i.  All other relief the Court deems appropriate.

Date:   February 27, 2023.

Respectfully submitted,

KENNEDY
Attorneys & Counselors at Law

/s/ Mark Kennedy
MARK S. KENNEDY
State Bar of Texas No. 24000122

LURESE A. TERRELL
State Bar of Texas No. 24008139
C. TREY SCOTT
State Bar of Texas No. 24083821
12222 Merit Drive, Suite 1750
Dallas, TX 75251
Telephone: (214) 445-0740
Fax: (972) 661-9320
markskennedylaw@msn.com

**ATTORNEYS FOR PLAINTIFF**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
(Wichita Falls Division)**

| | | |
|---|---|---|
| **PRECISE DIAGNOSTICS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CIVIL ACTION NO. \_\_\_\_\_** |
| **XAVIER BECERRA, Secretary,** | § | |
| **UNITED STATES** | § | |
| **DEPARTMENT OF HEALTH** | § | |
| **AND HUMAN SERVICES,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>VERIFICATION</u>

"I, Laura Walker, declare from my personal knowledge that the following facts are true:

1.      I, Laura Walker, an owner of Precise Diagnostics, LLC, am qualified to review the facts of this Verified Complaint.

2.      I have read the Verified Complaint, Application for *Ex Parte* Temporary Restraining Order, Request for Declaratory Relief, Request for Preliminary and Permanent Injunction, Request for Emergency Mandamus Relief, and for Attorney Fees.

3.      The facts stated in that complaint are within my personal knowledge and are true and correct.

I verify under penalty of perjury that the foregoing is true and correct."

Executed on February 27, 2023.

*Laura Walker*
LAURA WALKER